You did your recon in here yesterday on the panel. I saw you over there in the left corner. You're checking the panel out? Yes, sir. It's all right. It's nothing wrong. Other people do it. I just wanted you to know that we can see from up here. It was observed. It was observed. Come on. You're welcome to come on. I just want you to know we can see real good from up here. I was just observing an argument, Your Honor. It's nothing wrong. You need not respond to it. I'm just letting you know that I did see you sitting right over there. At any event, we call up your case. You're up on behalf of Ms. Allen. Thank you, Your Honor. May it please the Court, my name is David Taransky. I'm representing Mr. and Mrs. Allen in this case. It's 15-3. Let me just ask a question. Is the state of Louisiana here? No, ma'am. They didn't show for this event? I know they were just at MECAS. Yes, ma'am. I asked no. MIA, huh? Okay. Yes, ma'am. That is correct. All right. The central issue in this case, of course, and the Court is well versed in judicial estoppel cases, many recent opinions, is that judicial estoppel is an equitable doctrine which is fact-specific. In the recent case of Johnny Ray Long, for example, we've got a plan that vests the property of the estate. It's not vested in the debtor. It's vested in the estate. In this particular instance, this plan vests all the property of the estate in the debtor. As far as personal injury claims are concerned, the plan specifically provides that personal injury claims, which are not exempt and which exist at the time the case is commenced, are property of the bankruptcy estate. And pre-petition personal injury claims, that's the only mention of personal injury claims. I'm not a bankruptcy practitioner, but if I'm reading this plan, it tells me that if you've got a pre-petition personal injury claim, you've got to disclose it. It doesn't say anything about a post-confirmation personal injury claim. Now, we can't assume that Mr. and Mrs. Allen know what the law is, and I understand ignorance of the law is no excuse, and certainly that's axiomatic, but there is one case that's a district court case that speaks about if we're going to hold people accountable to the law, then the law should be at least clear enough to tell them what they're supposed to do, what their duties are. But this particular plan sets forth that personal injury claims, if they're pre-petition, must be disclosed. It doesn't say anything about post-petition or post-confirmation. Actually, this injury occurred post-confirmation. There is a provision concerning all sorts of claims that are reserved to the debtor and to the estate, and it goes on and on and on about unfair trade practices, but there's nothing in there that speaks to personal injury claims. So the only specific provision concerning personal injury claims in this particular plan says that pre-exist. I would think that the debtor, and if we're talking about a sophisticated debtor who reads this plan, that's the impression they're going to get. That's what I got. Now, Mr. and Mrs. Allen, how sophisticated are they? Well, their filing shows that at the time that they filed the bankruptcy petition, they had $20 in cash and zero in checking accounts, that their home was worth $25,000. So these are not sophisticated people. What standard are we going to hold them to? In the Johnny Ray Long case, which the court is, at least two of the judges are well familiar with that case, we had the court assume to be a bad actor. And if we've got an equitable doctrine, well, the court wants to look at the activities of the parties. Who is doing what? Let me ask you something. Yes, ma'am. Has anybody ever asked the trustee here to pursue this case? As far as I know. You have a trustee. Yes, ma'am. Well, you had a trustee. Yes, ma'am. MIA at the moment, but you had a trustee. Yes, ma'am. And presumably that trustee could be jazzed up again, could be reinvigorated? There's nothing in the record that speaks to that. I advised the debtors to go back to their bankruptcy counsel and talk to them, and I was told that the debtors, in order to reopen the case needed to come up with $270, and they didn't have it. So I don't know that anybody has taken action. The court's decision said that the Chapter 7 trustee, if it's converted to a Chapter 7, that the Chapter 7 trustee could pursue the claims. Well, yes, so what you have to do, I mean, presumably it would be the same trustee. No, ma'am. So it wouldn't be? The Chapter 13 trustee would not? To my understanding, and I don't practice in the bankruptcy court, to my understanding, excuse me, in the Western District in Shreveport, there's separate Chapter 13 trustee and Chapter 7, so they're different entities. Well, whether that would necessarily be so or not, I don't know. But in any event, I don't understand why we can't simply start, get a trustee put in place to pursue this lawsuit. I don't understand why we can't do that. That's what the district court said. I mean, I wrote Reid. Reid says we don't want this thing to become a tool to, you know, hurt innocent people. Yes, ma'am. Well, here, for example, the state of Louisiana is arguably an innocent person. And they're certainly hurt. And they're hurt big time. So why is it that we just don't go to the trustee, the former trustee in the bankruptcy court, and crank this case back up again and pursue this litigation? I don't understand that. Well, Your Honor, I advise my clients to go back to their bankruptcy counsel and speak with them. And I don't know what I can do with that. Because the district court did exactly what we told the district court to do in Reid. The district court, Your Honor, I think felt that it had to apply judicial estoppel since these factors were met. As to Allen following love and allegiance, right? That if these . . . yes, sir. But then more arguably innocent deserving, and I know you disagree with that characterization, creditors, state of Louisiana protected if trustee steps in. It seemed to craft that. You're pushing back on where does equity play out as to the Allens themselves. But isn't your argument essentially the dissent's argument in, is it Love versus Tyson, Judge Haynes' position? There seems to be what you're saying, which has emotional force, but it was a dissent. Your Honor, I think the facts in Love would be different because Mr. Love filed . . . he had an existing claim at the time he filed his bankruptcy petition. But she amended several times aware of this several hundred thousand dollar personal injury possibility. Again, Your Honor, I'm not that well versed in bankruptcy, but these were immaterial modifications to the plan for very specific purposes. It's not like there's some significant event that occurs that requires the Allens to refile all of this. But I guess I did notice I think there's some tension in the circuit. So your position is one that's getting bite, but our court in the Flugents' decision, of course I was on it. Yes, sir. It did draw a dissent, but it's fairly point blank. Well, we also have, Your Honor, the Wells Fargo versus Alparagi case, which says that the second factor of judicial estoppel is revoked if the bankruptcy is dismissed. So that factor doesn't exist. You mean no discharge here? Yes, sir. There's no discharge. The bankruptcy was dismissed in this case. So therefore, the acceptance is revoked and the creditors are free to pursue Mr. and Mrs. Allen for any claims they have. The decision of the district court in this case did not really speak to the state of Louisiana's claim, which is a very large claim, obviously. So if the bankruptcy is reopened, there was no discharge granted. Right. I know that. And so therefore, I would argue that we've got three factors in judicial estoppel, obviously, and the court has said that it's well settled, that it's plainly inconsistent if a debtor doesn't list a bankruptcy. Well, I don't know that the court has seen – maybe I'm stupid on this part, but I don't know that the court has seen a plan that says – that has this language in it that talks about pre-petition personal injury claims. Is that plainly inconsistent if somebody comes in and fails to amend their petition to add a post-confirmation cause of action when the plan doesn't say anything? It doesn't speak to that. If your client had won the lottery in the middle of this plan and you didn't report that, it would have been bad form. I don't know what the law requires, but it would have been the end. It would have been a serious problem. Yes, ma'am. And I've always made it a practice – and now I make it a practice everybody walks into my office and says, are you in bankruptcy? I wasn't aware of it. Best to check the docket sheet. Let me ask something. The state's lawyer knew about the defendant's motion for summary judgment. They did. I mean, at least they can be deemed to have known about it since they were noticed. Yes, ma'am. And I don't have a good response for you, Your Honor, because I don't represent the state, but obviously – By the way, do you represent the plaintiffs in the lawsuit? Is that – how are you – Yes, ma'am. So you're their lawyer in the lawsuit. Yes, ma'am. Personal injury case. So now if this case goes back into the bankruptcy court, which is probably where it ought to go, does your fee arrangement have to be approved by the bankruptcy court? Sure, it would, Your Honor. Yeah. If it's in bankruptcy. But it probably – that's probably not a problem. That's about the only time I encounter the bankruptcy court is if there's a settlement. And this particular plan, the language says if there's an agreement that 50% of the proceeds are going to go to the trustee, then you don't need any further authority from the court. That's what the plan states. However, that means that if there's no agreement that 50% of the proceeds go to the estate, then you have to seek settlement authority from the court. But otherwise, it doesn't speak to any disclosure requirement. Just when you're ready to settle the case, then you come into court and say, okay, we've got a settlement. Now, is the best practice? Certainly. There's no question that I would advise anyone, yes, if you've got a post-confirmation cause of action, you have to disclose it. But that's not what this plan says. And the debtors can't be presumed. I mean, people who, when they file, they have $20 in cash and their home's worth $25,000. Are we going to hold them to the same standards that you're going to hold a sophisticated debtor? Is that equity? And, you know, if the court wants to apply inflexible standards, then the court wouldn't keep using language such as we don't want to have district courts and bankruptcy courts misunderstand our rulings, that judicial estoppel should not be an inflexible standard. We should have some flexibility. We have to look at the actions of the actors. And let's look at the actions of the defendants for a moment. We've got all sorts of bad actions. Obviously, I'm the plaintiff's lawyer, so, you know, I would say that, but we have companies that are claiming we've got a stool that broke within 10 months of its purchase. So you think you've got a good lawsuit against them, is the bottom line? Yes, ma'am. We've got three surgeries, a stool that broke 10 months after it was produced with the advertising saying you can rely on us. It's industrial strength. Then we've got the company that made it, labels it made in the USA, but then they say it wasn't made in the USA. It was made in Taiwan. Somebody else made it. We third-partied two Taiwanese companies who had nothing at all to do with it, and they knew at the time that they third-partied them. They had nothing to do with it. They claim it's a company by the name of ECS Company, and ECS knew in March of 2012, two and a half years before, that the Allens had filed bankruptcy and did nothing, and they wait until two weeks before trial and say, oh, we just discovered this. Now, you know, I will assume, I'll give Mr. Muscagney the benefit of the doubt that he had completely forgotten about that, that he wasn't just sitting back waiting for the Allens to be discharged when they weren't discharged, that bankruptcy was dismissed. I'll have to give him the benefit of the doubt, but they did know two and a half years prior to the filing, even though they represented in the filing that we'd just found out that the Allens had filed bankruptcy. So, you know, you have to examine the equities involved and the actions of the defendants here. Are they the ones who are misusing the judicial process? I mean, this is supposed to stop people from manipulating the court system. But the district court did examine the equities, and in that type of assessing defendants sitting on the information, your clients, you know, and their attorneys, what deference do we owe him in that straightforward, firsthand assessment of equities? Well, Your Honor, the trial court's always entitled to deference. Certainly, what amount of deference is up for this court? What's the best case on it that would indicate to us that his assessment of equities balancing, I guess, would be clear error? I would just say this, Your Honor. The recent case of Johnny Ray Long, in a footnote, says, we don't want the district courts and bankruptcy courts to misunderstand us and then apply an inflexible standard, because judicial establishments should be flexible. You should examine all of the facts and equities of the case, and the Supreme Court has stated that, too, in the New Hampshire v. Maine case. To name one, that it's not supposed to be an inflexible standard, that if you find these three factors, then you have to apply judicial estoppel. There are a number of very well-written district court opinions in this circuit. Let me ask one question. Yes, ma'am. The statutes run on this case, right, of limitations? Well, the accident happened in 2009. Yes, ma'am. That's a one-year statute here, isn't it? Yes, ma'am. So it's important to keep this lawsuit alive. Yes, ma'am. Is there any reason why a trustee could not be substituted for the Allens in the case? I don't know what to answer. There's no case right now. It would have to be reopened. Well, there is a case. I mean, it hasn't died yet. We're still around. Yes, ma'am. The bankruptcy case was dismissed. Oh, I know, but I mean, what I'm saying is this case is not dead yet. Okay. Ma'am, certainly the trustee could be substituted if the court could do whatever it wants. The trustee could be substituted in place instead of the Allens. I don't know that that cures the state of Louisiana's claim. I don't personally think that's an equitable result, but I think my time is up, Your Honor. I believe I've answered your question. Thank you. Thank you, Your Honor. All right, Mr. Noss. Thank you, Your Honor. Isn't that the right thing to do here? Chip Noss, Your Honor, for ArgoCraft and Great American, and let me start with your question. This case was not dismissed. This case was closed after the debtors made their planned payments, and that was accepted by the bankruptcy court. Sir, you're talking about the bankruptcy case. The bankruptcy. The bankruptcy case was not dismissed. That's the distinction between this case and Operagi. This case was closed. That's a critical distinction because your question about the state is that the state's rights are protected. Judge Hicks's opinion protected the rights of the states, and the reason they're protected is because this case was closed rather than dismissed. The state or any other creditor has the right under Section 350 of the Bankruptcy Code to reopen the case, and when the case is reopened, it will likely be converted to a Chapter 7 because of the debtors' failure to disclose the postpetition claim. When it's converted, the state, as a postpetition creditor under Section 348D of the Bankruptcy Code, is deemed to be a prepetition creditor, and it would share pro rata in any recovery on account of this claim. Why isn't that the thing to do? Because the bankruptcy case has been closed. The people with the power to reopen this bankruptcy case are the debtors. As the final decree in this case said, if you want a discharge because you didn't file the official Form 23 certificate saying you went through the course, you can go reopen the case and get a discharge or to administer an asset that you didn't disclose. The debtors didn't take any action to reopen this bankruptcy case, none whatsoever, from the time that they found out about the motion for summary judgment. All right. How do you get this thing straightened out? I mean, the answer is the State of the— The answer is— Just let me finish. Okay. I get to finish. Yes, ma'am. In this venue. Not at home, but here. I don't get to finish at home. Yeah. We all have that problem. Why is it that the thing to do here is to get this case reopened, get a trustee appointed, which is what the district court wanted, and make whatever arrangements they have to make with counsel and pursue it? Why is that not the thing to do? Your Honor, I don't—there's nobody stopping the State or any other creditor from doing that. They have the rights to do that under the Bankruptcy Code. From the standpoint of a creditor, I've done that all the time when something like this happens. Yeah. But they have the right. Judge Hicks's opinion preserved that right, too. Exactly. So what we have to do is we have to—in order to get the right result here, we have to reverse. We have to say the answer, because you've got to keep this case alive, because the statute's run on filing another lawsuit to recover the same thing. You've got to keep it alive, get a trustee appointed, and pursue it. I know you're representing the defendants, right? It doesn't sound good to me. Correct, Your Honor, but I think I'm addressing the rights of the State, and I think that Judge Hicks's opinion is clear that the State has that right, and any other creditor. The problem with this case and why the debtors should be stopped and why Judge Hicks's opinion is right— and by the way, in my brief I said the standard of review was de novo. It's actually abuse of discretion because it's judicial estoppel. Your decisions on this are clear. It's an abuse of discretion standard. And so the reason the debtors should be stopped is because they didn't disclose the post-petition claim. The language of the plan is not as Mr. Taransky represented. In fact, the language of the plans, the two plans that were proposed by the debtors after the claim not only accrued, but they were filing suit in district court, literally down the hall from the bankruptcy court, says, and I quote, the title of the section is Reservation and Retention of Pre- and Post-petition Claims. It reserves for himself and the bankruptcy estate. It doesn't vest all property in the debtors unconditionally. Post-petition claims are reserved for the debtors and the bankruptcy estate. In the first plan that was confirmed before the claim accrued or the accident occurred, it vested that post-petition claims in the debtor and the Chapter 13 trustee. The reason the Chapter 13 trustee closed the case and didn't do anything about this claim is the debtors never disclosed it. The Chapter 13 trustee didn't know about this claim when the case was closed. The debtors were actively pursuing it down the hall. Judge Hicks's decision with respect to the debtors' right to recover on account of this claim is correct, but he protected the rights of the- I know he did. So that's, I mean, that's the thing that stands out all over it. He protected the rights of the creditors of this estate, including the state of Louisiana, to be made whole or whatever they're going to get from the windfall. So why is that not- But those rights are protected as we sit here now, but the creditors have to reopen the case under Section 350, and they have a basis to do so. Trustee, yeah. Yeah, but the Chapter 13 trustee typically, as you know, Chapter 13 trustees don't pursue these kind of claims, but in this plan there was a provision that goes against his argument that it didn't address post-petition claims. It says if you have a post-petition claim and you provide that 50 percent of it goes to the unsecured creditors, to the trustee, you have the permission to settle it. They were pursuing that claim. They never disclosed it to the court, and the trustee didn't dismiss the case, closed the case because they had completed their planned payments. They made 45 planned payments. Of that amount, $36 a month went to the unsecured creditors in this case. How much was the unsecured debt? The statement about $30,000, we had about a 5.6 percent or 5.9 percent dividend, and these creditors, they wouldn't have had to have paid 50 percent to the unsecured creditors. They could have paid far less than that if the claim is as valuable as they say it is because it wouldn't require 50 percent. They didn't even do that. They still haven't gone back to the bankruptcy court to this day and asked for permission to reopen it, which they had the right to do. Who was the Chapter 13 bankruptcy lawyer for the— I think it's the Simon Fitzgerald firm, and that is—I want to point that out, Your Honor, because that's key. In this plan that they confirmed, and it wasn't an immaterial modification in bankruptcy lingo. It was a new proposed modification that was noticed out to creditors. The plan said this. To the extent a claim or counterclaim is known by the debtor, the debtor is aware of the duty to list such claim or counterclaims in the schedules and statements filed with this bankruptcy. The debtor has been informed that such claims or counterclaims may be lost under the legal doctrines of issue preclusion and that the debtor may later be barred from raising or pursuing such claims if they don't disclose them. That was in the debtor's plan that they proposed to the bankruptcy court after the claim had accrued and they had filed suit in the district court down the hall. Okay, but so what do you want us to do? I want you to affirm Judge Hicks's ruling, which protects the state and any other creditor that wants to go back to bankruptcy court and reopen the bankruptcy case. But what we don't want to have happen here is for this case to be dismissed because then the statute will have run on it, limitations or whatever you call it here. But I think the dismissal—I mean, I'm not—I think the dismissal— but I think the case, Judge Hicks says, this is without prejudice to the rights of a Chapter 7 trustee to pursue this claim. Remember, you have this case and then you have the bankruptcy case, which is closed. Are you telling me that if we just affirm here, okay, but we say to the state, who looks to me like it's been not exactly diligent here, but they did certainly do stuff at the beginning. If we just simply affirm and this case ends and then a Chapter 7 trustee is appointed to pursue this claim, that they don't have to file a new lawsuit? I don't think they have to file a new lawsuit based on Judge Hicks's decision. I think they can be substituted. Well, that's what you want. And that's what he protected. And so I wanted to make that clear to the court that the state's rights are preserved. And it's not a dismissal. That's key because if there was a dismissal, this would be a Rule 60B issue. You'd have to go back to the bankruptcy court and say, look, you dismissed the case. And under 1307, when you dismissed that case, you didn't know about the post-petition claims, so you made the wrong decision. You didn't do what was in the best interest of creditors. That's 1307. This is 350. This is an ex parte motion to reopen the case by the state or any other creditor, and the trustee is then, the court's going to obviously appoint a Chapter 7 trustee, and the Chapter 7 trustee has the right to pursue the claim. But he doesn't have to file a new lawsuit? I don't think he does under Judge Hicks's decision because he made a specific reservation. He says it's without prejudice. That's the part that's not as clear to me as you're saying it. I'm not saying it's not, but . . . Maybe we would need to make that clear. Yeah, it's not as clear to me that that's all self . . . It's not as clear to me that that's all self-evident if it's, let's say, just a straight-up affirmance that while some of what you said may be true in a sense, it doesn't naturally follow that the next step is X, Y, or Z, and that's kind of why, if you will, you know, it was the bankruptcy attorneys in, and I guess they were the Chapter 13, and I guess I'm understanding if it goes back, we're talking about converting? Yeah, what we . . . 13 is over. They paid all the money, so that's a done deal, right? That's a done deal. They've completed all their planned payments. So what would happen, judges, what happens in these cases is you go back and say, look, this asset was not disclosed. Under your decision in Long, in Flugents, in Reed, that asset is still property of the bankruptcy estate even though the bankruptcy estate is closed. I don't even think the debtors have the ability to pursue it because it was an undisclosed asset, and under 554 in Long, it remains property of the bankruptcy estate that when reopened and converted to a Chapter 7 because of the debtor's failure to disclose, the Chapter 7 trustee can pursue. Happens all the time. Even in a statute of limitations context? Your Honor, I wish . . . I think, and I can't cite you any authority, but I think under Judge Hicks' opinion, it is clear that he preserved that claim for the benefit of the bankruptcy estate. That claim still exists because it was never disclosed to the court. As long as it's clearly evident that it's part of the bankruptcy estate. Correct. Otherwise, it would have. And the other thing I think, you know, that I like to see as a bankruptcy lawyer is in the Lasecki case, which is this case. You had a case where the planned payments were completed, the case was closed, and the court said, we're going to get away from that reliant standard having to have a discharge order because the court accepted the representations which are continuing of the debtor that they had no claim and closed the case. And so, we're not going to let them avoid judicial estoppel by saying, oh, I didn't get a discharge because I didn't complete the financial management course, and therefore you can't apply judicial estoppel. And the quote in that case was, the bankruptcy court accepted her position when it closed the case and discharged the trustee following his finding that there were no assets to administer. It was not a lack of acceptance of her position by the bankruptcy court, but rather Lasecki's own failure as the debtors in this case to complete a required instructional course that prevented her debts from being discharged. That's what we have here. They shouldn't benefit from that. And for that reason, and subject to your concern about protecting the rights of the states and the other creditors, I think that the ruling of the district court should be affirmed. Thank you very much. Thank you. Mr. Armand? Your Honors, taking the balance of our time, Don Armand, and I represent C&H in the case. To speak to the court's concern about the state, I'd like to make a couple of comments about that. The state, first of all, was not a party to the lawsuit. No. And that's an issue, I understand, a concern, because the district court, I believe, nor this court can directly rule on the state's rights. In other words, at the time that the district court refused to allow the state to intervene, the state was free to go file a suit in state court, as they often do, usually do. The state has been free to exercise its rights throughout this case. It's still, right now, free to do whatever it chooses to do to protect its own interests. But this court, I don't believe, can necessarily address that. In other words, the parties here are the Allens and the defendants. And the issue is whether the Allens are judicially stopped from pursuing the claim, and they are. They should be under the clear decisions of this court. But a Chapter 7 trustee wouldn't be. And the state is in a unique position, because you see the Allens, the state is also a creditor, of course, of the Allens, because under the Louisiana statute, the workers' comp statute, the Allens owed the state a reimbursement for many a recovery in this case. So the state was a creditor. Likewise, the state was paying substantial comp benefits, which also were not disclosed to the bankruptcy court. The ongoing indemnity benefits that the Allens received, the fact that they were making those to the bankruptcy court. So it's a unique case. I think that the right answer, though, Judge, is that this court really can't rule ultimately on whether the state's rights are precluded by a statute of limitations problem or not. Whether they are or not is not an issue for this court. It's just not, because the state's not a party. The concern, the equitable concern, is there. And I think all this court can do is exactly what Judge Hicks did, which is to say the this decision should not prejudice the creditors. Including the state in as much as . . . Correct, Judge, because they are a creditor. I mean, under the statute, the state's a creditor, so they're within that . . . So to whatever extent, I mean, and again, these defendants vehemently denied, you know, despite counsel's comments about the conduct of our clients, we disputed liability and would have gone to trial on the case. So on the merits, liability was significantly disputed. So that's the way it was. But the state is a creditor. The state is among the parties protected. They've been free to exercise their rights all along. Tell me something. I can't, because I didn't do this for a living, but this is a claim that the stool broke . . . Yes. . . . after the bankruptcy case was already going. Yes. So the creditors of a Chapter 13 would include post-petition? Well . . . They do? It does? Well, my understanding of . . . I'm not a bankruptcy lawyer either, Judge, so I may not be answering your question, but first of all, the duty to disclose by the debtors exists for post-petition claims under this Court's rulings, and it is . . . A little question there. Right. But now, if you're asking was the state or how was the state a creditor . . . Yeah. Okay. Here's how the state is a creditor. When they paid benefits, you know, Ms. Allen made a claim for comp and started getting comp, and every dollar that the state paid then, the Allens became a creditor of the state, and here's how. If the Allens have a third-party claim against any defendant for that liability, then their right of recovery is owed back to the state to the extent the state paid money. So the state's a creditor. Absolutely. There's no . . . They had a claim and do have a claim against the Allens for comp benefits, but only to the extent that the Allens have rights against third parties. And so their rights still are protected to this day, to the extent that they still exist, you know? Now, whether there's a statute of limitations problem, I don't know the answer to that question. I think Mr. Noss is correct. To the extent that Judge Hicks or this Court can protect the state or any other creditor, this is the result. And my answer to the question of what the Court should do is the same as Mr. Noss has affirmed, because the trial court's, the district court's ruling literally says, without prejudice to the rights of a Chapter VII trustee to pursue the claims if the Allens bankruptcy case is reopened and converted. And if it needs to be clarified to say, you know, that to the . . . without the prejudice . . . without prejudice to the rights of any creditors to reopen . . . Reopen. Yeah. I mean, I think to the . . . Right. To the extent that . . . I mean, in other words, that that's . . . So we're all in favor of it. Reopen. Well, the . . . Well, what we're in favor of is the denial . . . or, in other words, the . . . that the Allens be judicially estopped from pursuing their claims. If creditors of the Allens or the trustee has the ability to pursue them for the benefit of the creditors to the extent that there's debt there, but the Allens claims should be estopped. And that was what was correct. A couple of other responses, Judge. The . . . the . . . the language of the Allens filing of their amended . . . and it was . . . you know, the amendments happened multiple times, but they are directly acknowledging not only knowledge that post-petition claims have to be reported, but knowledge that basically of this Court's rule that judicial estoppel exists. And they acknowledge that. And so to the extent that they . . . you know, to any extent they claim ignorance of the law, it's directly . . . number one, it's just not legally material. Number two, it's directly contrary to their planned filings. And if the Court has any other questions, I'd be happy to answer them. I don't think we got you. All right, Mr. Duransky, you're back up. Thank you, Your Honors. A couple of things. We mentioned this Lesecki case, which is an Eastern District of Michigan case, I believe. But we've got some excellent written opinions in district courts within the Fifth Circuit. The Gilbreth case written by Judge James, the Woodard case, and the Wyeth v. Bird case. These are all excellent written opinions of district courts in this circuit rather than some other circuit. But we also have . . . you know, we're talking about summary judgment. For purposes of summary judgment, my allegations or, excuse me, plaintiff's allegations should be considered to be correct as far as the actions of the defendants. The fact that they don't even have a liability expert. There's no attempt to defend the defectiveness of the product. And some of the actions that they've admitted that at least ECS knew two and a half years before the filing of this motion that they were aware that the Allens had filed bankruptcy. Perhaps they were waiting to see whether or not there would be a discharge granted. And it wasn't. The case was dismissed. So the creditors are put back into the same position that they occupied previously. So we really don't even have the judicial acceptance aspect, the second point of judicial estoppel, under the law of this circuit in the Wells Fargo v. Operaggi case that, you know, the court has to accept the position. It's been revoked since there's no discharge granted.  As far as the state of Louisiana, Judge Hicks's opinion didn't mention anything about the state of Louisiana. I certainly could suggest, I wasn't aware that the state could come in and file to reopen the bankruptcy. Certainly any creditor could come in and file to reopen the bankruptcy. I just advised the Allens to go back and talk to their bankruptcy lawyer and see what could come of it. He wanted $249 before he'd listen, huh? I was told $270. No, that's not part of the record. There you go. Well, and I can't tell you they wouldn't listen, but they were told that that would be the filing fee. I bet the bankruptcy court wouldn't be too keen on that. I really don't want to speak for the bankruptcy court. The Allens, of course, could have converted this to a Chapter 7. The lady had become unemployed. Their income had been reduced. I mean, they were only paying $150 a month. But the income, even from that meager amount, had been reduced. At the time they filed, Mr. Allen was on Social Security benefits, $548 a month, and Ms. Allen was a receptionist, and she wasn't even earning that. They could have easily converted it to Chapter 7, and therefore we wouldn't even have to consider any post-petition claims. But they didn't do that. If they were sophisticated, if they were trying to manipulate the system, they'd say, hey, why don't we just convert this to a Chapter 7, and therefore any post-petition claims, any post-confirmation claims don't even matter. We're free to pursue our claim and creditors be damned. But they didn't do that. Is that not more evidence that we've got inadvertence here? When Mrs. Allen, when they were filing for their discharge, the listing of who are you employed by? None. They weren't trying to manipulate the process. On the other hand, there's all sorts of manipulation on the part of the defendants in this case. So are we going to employ an equitable doctrine to knock out the plaintiffs who are unsophisticated debtors, who, you know, arguably for purposes, and as far as de novo review, I may have addressed this at the front end because we're talking about summary judgment. The Wells Fargo v. Alparagi case says, yes, you do review summary judgment, and there may be a conflict with other cases, but that's what it says, so we've got conflicting authorities, that you do review de novo the grant of summary judgment in judicial estoppel cases. There are other cases that the Fifth Circuit has that says, no, you don't. So, you know, what exactly is the law? Well, that's for the Fifth Circuit to decide, but clearly this is an equitable doctrine, and that requires that the court study the facts and determine, you know, is this a mechanical application of a doctrine that shouldn't have been applied under the facts of this specific case, considering the actions of the plaintiffs, the actions of the defendants, and on summary judgment. And if there's any question about it, well, maybe it should go to trial, and the court can consider whether or not Mr. and Mrs. Allen had any intent to manipulate the system or whether or not they knew what was going on and what the plan language states. And you can look at the plan language. The only mention of personal injury cases is pre-petition. Yes, sir. I'm sorry. Thank you. Thank you. Appreciate it. I think we have your argument. Thank you to all counsel for your briefing and argument. This case will be submitted. All right. We call up the final case.